OPINION OF THE COURT
Jasen, J.
In this action seeking a declaration that a Dominican Republic divorce decree and the separation agreement incorporated therein are void, we are called upon to decide the extent to which recognition must be accorded a foreign divorce decree in an action seeking to set aside a provision of a separation agreement incorporated into such decree.
The Greschlers were married on June 26, 1955. On August 22, 1975, the parties entered into a séparation agreement. Paragraph 5 of that agreement provided that plaintiff, Helen Greschler, waived all claims against her husband, the defendant, for alimony. The agreement also provided that, in the event either party obtained a divorce, the separation agreement would be "incorporated” into the decree but that it would otherwise survive the divorce and remain fully binding on the parties.
On October 6, 1975, plaintiff signed a power of attorney authorizing her appearance in a divorce action in the Dominican Republic. This power of attorney also provided that the separation agreement be submitted to the Dominican Republic court for approval and that the court "ratify and affirm” the agreement by incorporating it into the divorce decree and by directing the parties to comply with its terms.
On October 24, 1975, the defendant appeared personally before the Court of First Instance of the Judicial District of Santo Domingo, Dominican Republic, and obtained a divorce from the plaintiff on the ground of "incompatibility of temperaments”. The decree recited that plaintiff appeared in the action by her attorney-in-fact and that the marriage between the parties was dissolved. In addition, the decree incorporated the prior separation agreement and ordered the parties to "comply with each and every provision of the said agreement.”
By a complaint dated August 8, 1978, plaintiff commenced an action in Supreme Court, Kings County, seeking to set aside the 1975 separation agreement and requesting that *374 alimony payments be fixed by the court. The complaint alleged that the separation agreement was void as against public policy because, it contained a provision in which plaintiff waived her right to support. (See former General Obligations Law, § 5-311.) As a second cause of action, plaintiff alleged that the separation agreement was void because it was procured by the defendant’s fraudulent misrepresentations.
Recognizing the conflict of laws problem, Special Term determined that since the separation agreement had been incorporated into the consented-to Dominican Republic divorce decree, plaintiff could not collaterally attack the validity of the separation agreement without first challenging the divorce decree on jurisdictional grounds. Therefore, the court dismissed the complaint with leave to replead.
Thereafter, plaintiff served an amended complaint in which she sought to set aside the Dominican Republic divorce decree and the separation agreement which it incorporated. As a first cause of action, plaintiff alleged that the power of attorney authorizing her appearance in the divorce action in the Dominican Republic and the separation agreement were without effect because both were procured by fraud. In support of this claim, plaintiff’s complaint stated that the defendant represented his earnings and assets to be "a certain amount” when in fact they were "materially in excess of that so represented.” As a result of this fraud, plaintiff contended that the Dominican Republic court was without jurisdiction to grant the divorce and that the divorce decree and separation agreement incorporated therein were void. As a second cause of action, plaintiff, again relying on former section 5-311 of the General Obligations Law, alleged that her waiver of support in paragraph 5 of the separation agreement was void and unenforceable because it violated the public policy of New York. Accordingly, plaintiff requested a judgment declaring that the Dominican Republic divorce decree and the separation agreement were void, that the parties were still married, and ordering the defendant to pay alimony to plaintiff.
Pursuant to CPLR 3211, defendant moved to dismiss the complaint for failure to state a cause of action. Special Term denied his motion. On appeal, a unanimous Appellate Division reversed, granted defendant’s motion and dismissed the complaint. The Appellate Division first determined that plaintiff’s cause of. action in fraud was not pleaded with sufficient detail to withstand defendant’s motion to dismiss. The Appellate *375 Division then went on to dismiss the second cause of action by holding section 5-311 of the General Obligations Law unconstitutional on the ground that it contained an impermissible gender-based distinction.[1] (See Orr v Orr, 440 US 268.)
On this appeal, plaintiff seeks a reversal of the order of the Appellate Division contending that the court below erred in dismissing her fraud cause of action. In addition, plaintiff argues that former section 5-311 of the General Obligations Law was not unconstitutional[2] and, therefore, her waiver of support was void and unenforceable.
At the outset, we note our agreement with the Appellate Division that plaintiff’s cause of action in fraud was not pleaded with sufficient particularity and was properly dismissed. Plaintiff’s conclusory allegations as to the defendant’s misrepresentations concerning his financial status fail to meet the statutory requirement that a cause of action based upon fraud be pleaded "in detail”. (CPLR 3016, subd [b]; see CPLR 3013.) Moreover, when confronted with defendant’s motion to dismiss, plaintiff failed to come forth with any facts or circumstances constituting the claimed fraud as required by law. (Cf. Jered Constr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194.)
However, the Appellate Division erred when it went on to address the merits of plaintiff’s second cause of action after having dismissed the fraud claim. Under well-established principles of conflict of laws, plaintiff, by failing to successfully challenge the jurisdiction of the Dominican Republic court on the ground that her power of attorney was obtained by fraud, was precluded from assailing the validity of the separation agreement incorporated into the foreign decree on the ground that it contained an impermissible waiver of her right to support under New York law. Since this latter cause of action, attacking solely the validity of the separation agreement, was *376 rendered moot by the dismissal of the threshold claim that jurisdiction over the parties in the Dominican Republic was obtained by fraud, we do not pass upon the question of the constitutionality of former section 5-311 of the General Obligations Law.
Although not required to do so, the courts of this State generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity which is the equivalent of full faith and credit given by the courts to judgments of our sister States. (See, e.g., Schoenbrod v Siegler, 20 NY2d 403, 408; see, generally, Restatement, Conflict of Laws 2d, § 98; Leflar, American Conflicts Law [3d ed], § 84, pp 169-171.) Absent some showing of fraud in the procurement of the foreign country judgment (Feinberg v Feinberg, 40 NY2d 124) or that recognition of the judgment , would do violence to some strong public policy of this State (see, e.g., Mertz v Mertz, 271 NY 466), a party who properly appeared in the action is precluded from attacking the validity of the foreign country judgment in a collateral proceeding brought in the courts of this State.[3]
In extending comity to uphold the validity of foreign country divorce decrees (Rosenstiel v Rosenstiel, 16 NY2d 64), it is logical that we would also recognize all the provisions of such decrees, including any separation agreements which may have been incorporated therein. (See Lappert v Lappert, 20 NY2d 364.) In fact, we have statéd that a foreign divorce decree rendered by a court with in personam jurisdiction over both spouses has an "overriding effect” on any subsequent action seeking alimony such that "no right of support can survive except as awarded by the final decree of divorce or by an authorized amendment to such decree.” (Lynn v Lynn, 302 NY 193, 203-204; Lappert v Lappert, 20 NY2d 364, 367, supra.)
It follows then that if plaintiff’s power of attorney is no longer challenged on the ground of fraud, her authorized appearance in the divorce action gave the Dominican Republic court jurisdiction not only to grant the divorce, but also to *377 determine her right to support. Inasmuch as the Greschlers’ separation agreement was incorporated by the Dominican Republic court in its final decree of divorce, that agreement may not now be modified by an action brought in this State unless modification is required by reason of some compelling public policy. (See Rehill v Rehill, 306 NY 126, 135.)
Thus, there remains the question whether it is offensive to the public policy of this State to give full recognition to the Dominican Republic divorce decree simply because it incorporates a separation agreement which provides for plaintiff’s waiver of her right to support in contravention of former section 5-311 of the General Obligations Law.
While it is generally the rule in this State that where the basic public policy of the forum would be offended a court can refuse to recognize the validity of a foreign judgment (cf. Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574; Mertz v Mertz, 271 NY 466, supra), the public policy exception to the doctrine of comity is usually invoked only in the rare instance "where the original claim is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.” (Restatement, Conflict of Laws 2d, § 117, Comment c; Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 227-228; see, also, Leflar, American Conflicts Law, § 48, pp 90-92.) Thus, for this court to refuse full recognition to a lawful foreign judgment, it must be demonstrated that the decree violates "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.” (Loucks v Standard Oil Co., 224 NY 99, 111.) Public policy should not be "determinable by mere reference to the laws of the forum alone” or "in the decisions of our courts in the Victorian era”. (Intercontinental Hotels Corp. [Puerto Rico] v Golden, 15 NY2d 9, 14.) Rather, public policy should be predicated upon “the prevailing attitudes of the community”. (Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 580, supra.) It follows that foreign judgments generally should be upheld unless enforcement would result in the recognition of a “transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense.” (Intercontinental Hotels Corp. [Puerto Rico] v Golden, 15 NY2d 9, 13, supra [emphasis supplied].)
In applying these rules and in ascertaining the public policy of New York as it concerns plaintiff’s ability to waive her right to support, we must look to the currently prevailing *378 attitudes of the people of this State. This is best reflected in the recent amendment to the General Obligations Law. As amended, section 5-311 of the General Obligations Law now provides that either spouse may waive his or her right to support as long as he or she is not likely to become a public charge. (L 1980, ch 281, § 19.)[4] Thus, by abrogating the gender-based distinction of former section 5-311 of the General Obligations Law, the Legislature has indicated that the present public policy of this State is that a wife validly can waive her right to support. Under these circumstances, plaintiff’s waiver of support as incorporated in the Dominican Republic divorce decree does no violence to the preváiling policy of this State.
In sum, without first overturning the validity of the Dominican Republic divorce decree, plaintiff may not collaterally attack the divorce decree by challenging the provisions of the separation agreement incorporated therein. Since the claim of fraud in the procurement of her power of attorney has been properly dismissed, plaintiff’s allegation that paragraph 5 of the separation agreement violated former section 5-311 of the General Obligations Law was rendered academic and should not be considered by this court.
Accordingly, the order of the Appellate Division should be modified, with costs to defendant, by granting judgment declaring (1) that plaintiff is not entitled to a declaration that the Dominican Republic divorce decree is void because the allegations set forth in the first cause of action fail to satisfy CPLR 3016 (subd [b]); and (2) that, inasmuch as the Dominican Republic divorce decree is outstanding, plaintiff is not entitled to challenge the validity of the separation agreement incorporated therein. (See Lanza v Wagner, 11 NY2d 317, 334; cf. Siegel, New York Practice, § 440.) As so modified, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur; Judge Meyer taking no part.
*379 Order modified, with costs to defendant, in accordance with the opinion herein and, as so modified, affirmed.

. Prior to its recent amendment (see L 1980, ch 281, § 19) section 5-311 of the General Obligations Law provided in pertinent part:
"Certain agreements between husband and wife void.
"A husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife or to relieve the wife of liability to support her husband provided that she is possessed of sufficient means and he is incapable of supporting himself and is or is likely to become a public charge.”

. The Attorney-General, who intervened in the action by permission of the Appellate Division, joins plaintiff on this appeal seeking a reversal of so much of the order of the Appellate Division as held former section 5-311 of the General Obligations Law unconstitutional.

. We are not here concerned with a situation in which the law of the jurisdiction rendering the judgment would allow an attack on its own judgment on the same grounds alleged in the New York action. (See Feinberg v Feinberg, 40 NY2d 124, supra.) If such were the case, we also would allow collateral attack as "there is no reason to give more conclusive effect to a foreign judgment than it would be accorded by the courts of the jurisdiction which rendered it.” (Schoenbrod v Siegler, 20 NY2d 403, 409, supra.)

. As amended by section 19 of chapter 281 of the Laws of 1980, section 5-311 of the Generad Obligations Law now provides in pertinent part:
"Certain agreements between husband and wife void.
"Except as provided in section two hundred thirty-six of the domestic relations law, a husband amd wife camnot contract to alter or dissolve the marriage or to relieve either of his or her liability to support the other in such a manner that he or she will become incapable of self-support and therefore is likely to become a public charge.”